UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CHRISTOPHER ROALSON,

        Petitioner,

    v.                              Case No. 18-cv-1831-pp

JON NOBLE,[1]

        Respondent.

**ORDER DISMISSING *HABEAS* PETITION (DKT. NO. 1), DISMISSING CASE WITH PREJUDICE AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY**

On November 20, 2018, the petitioner, who is incarcerated at Kettle Moraine Correctional Institution and is representing himself, filed a petition for writ of *habeas corpus* under 28 U.S.C. §2254 challenging his 2013 conviction in Sawyer County Circuit Court for first-degree intentional homicide and armed burglary. Dkt. No. 1. On December 17, Magistrate Judge William E. Duffin screened the petition and ordered the respondent to answer or otherwise respond. Dkt. No. 8. On February 15, 2019, the respondent answered the petition. Dkt. No. 12. The parties have fully briefed the petition.

---

[1] Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts says that if someone is currently in custody under as state-court judgment, "the petition must name as respondent the state officer who has custody." The petitioner is in custody at Kettle Moraine Correctional Institution. This order reflects Warden Jon Noble as the respondent.

1

The petitioner is not entitled to *habeas* relief. This order dismisses the petition, dismisses the case with prejudice and declines to issue a certificate of appealability.

# I.    Background

## A.    Underlying State Case

### 1.    *Trial in Sawyer County Circuit Court*

In 2009, the petitioner invaded 93-year-old Irena Roszak's home in the middle of the night, stabbed Ms. Roszak eighteen times and beat Ms. Roszak in the head with a stool. Dkt. No. 12-38 at 10, 32-33. The petitioner's accomplice, fifteen-year-old Austin Davis, pled guilty to second-degree intentional homicide for his participation in the home invasion and murder. Dkt. No. 12-5 at ¶2.

In the ensuing investigation, Wisconsin State Crime Laboratory analyst Ryan Gajewski conducted DNA analysis on items recovered at the scene. Id. at ¶3. Those items included two knives—one with a black handle and one with a wood handle. Id. While Gajewski found no blood on the knives, he recovered DNA from both. Id. On the blade of the black-handled knife, Gajewski found Ms. Roszak's DNA. Id. at ¶4. On the black handle, Gajewski found a mixed DNA profile with four contributors. Id. "Roszak, [the petitioner], and Davis were all possible contributors, and approximately 1 in 510 people could be a contributor." Id. "On the wood-handled knife's blade, Gajewski found a mixed profile from at least four people." Id. at ¶5. "Roszak and Davis were possible contributors, and approximately 1 in 1000 people could be a contributor." Id. On the wooden handle, Gajewski found a mixed DNA profile with three

2

contributors. Id. Ms. Roszak and the petitioner were possible contributors; "[a]pproximately 1 in 12,000 people could have been a contributor to that profile." Id.

At the time the trial began, neither Gajewski nor "the analyst who did the original peer-review analysis" was available to testify. Id. at ¶6. "Gajewski was employed elsewhere and located in Afghanistan," while the analyst who conducted the original peer-review had retired. Id. Over the petitioner's objection, the circuit court allowed the State to introduce the DNA evidence through a different analyst—Carly Leider. Id.

Leider did a "complete technical review" of Gajewski's work, and her conclusions "matched Gajewski's." Id. In support of its motion to introduce DNA evidence through Leider, the State "presented the following facts":

> Ms. Leider explained a peer review is performed as a [matter] of procedure and completed prior to a report being written. The notes, data and any tests are examined to ensure they coincide with the evidence. Further, the data, notes and test lead the reviewer to a conclusion. The peer review is meant to make sure the conclusions in the report are correct.
>
> Ms. Leider thought it would be possible to do a complete technical review of the tests, notes and supporting materials from analyst Ryan Gajewski's report from October 1, 2009 and reach her own opinion.
>
> Ms. Leider described this procedure of a complete technical review to be essentially the same procedure a peer reviewer would follow but it occurs after the report has been completed.

Dkt. No. 12-5 at ¶13.

Leider's trial testimony stated that an outside agency accredited the crime lab, and each DNA analyst in the lab followed the same authorized

3

procedures. Id. at ¶14. She explained the process of accreditation and the lab's procedure for analyzing and comparing evidence. Id. She testified to the concept of technical review, stating that it is

> basically a peer review. What I mean by either of those terms is after the analyst that conducts the work in our laboratory, every case that's generated has to go through a peer or technical review where another analyst will proofread the entire file, come to their own conclusions and check the documentation of the file before it goes out the door.

Id.

Leider stated, "I look at the data which is simply the DNA profile that was detected, I can look at that profile that anyone in the laboratory could have generated. I look at the standards and make my conclusions." Id.

Aside from DNA evidence, the State presented testimony from Davis and Jacqueline Walsczak. Dkt. No. 12-5 at ¶7. "Davis testified that he accompanied [the petitioner] into the home, but that [the petitioner] stabbed the victim and beat her with a chair." Id. Ms. Walsczak, "a very good friend" of the petitioner's, testified that the petitioner "confessed the stabbing to her three days before the victim's body was found." Id. "Walsczak also testified to details of the events prior to and during the crime." Id. "The details she provided were consistent with those provided by Davis." Id. Finally, Walsczak testified that the petitioner stated if he was not caught for Ms. Roszak's murder, he would do it again. Dkt. No. 12-38 at 38-39.

2.  *Direct appeal*

The petitioner (represented by Attorney Tim Provis) appealed, arguing that "his constitutional confrontation right was violated when the State

4

introduced DNA evidence but failed to produce at trial Gajewski, the analyst who actually analyzed the DNA evidence and prepared a report." Dkt. No. 12-5 at ¶8; Dkt. No. 3-1 at 7. On July 15, 2014, the Wisconsin Court of Appeals affirmed the circuit court's judgment. Dkt. No. 12-5. In August of 2014, the petitioner filed a petition for review in the Wisconsin Supreme Court. State v. Roalson, Appeal No. 2013AP1693 (available at https://wscca.wicourts.gov). On June 12, 2015, the court denied review. Dkt. No. 12-9.

B.      State Postconviction Proceedings

On July 5, 2016, the petitioner filed a *pro se* Wis. Stat. §974.06 postconviction motion for a new trial and an evidentiary hearing in Sawyer County Circuit Court. Dkt. No. 12-10 at 9; Dkt. No. 12-13 at ¶3; State v. Roalson, Case No. 2009CF69 (available at https://wcca.wicourts.gov). The petitioner "challenge[d] the effectiveness of his post-conviction counsel, alleging that [Attorney Provis] failed to raise other appellate issues which [the petitioner] had requested him to address." Dkt. No. 3-1 at 8. Specifically, the petitioner asserted that trial counsel was ineffective for failing to move to dismiss the case based on destruction of evidence, failing to object to a party-to-a-crime instruction and failing to object to allegedly improper argument. Id. The petitioner "also argue[d] that his appellate counsel was ineffective for making the argument which counsel *did* raise on appeal, because the peer review issue was already a matter of settled law." Dkt. No. 3-1 at 8 (emphasis in original). Citing State v. Escalona-Naranjo, 185 Wis. 2d. 168, 181-82 (Wis. 1994), the State responded that the petitioner was not entitled to an evidentiary hearing

5

because he failed to demonstrate a "sufficient reason" for not raising his ineffective assistance of trial counsel claims on direct appeal. Dkt. No. 12-13 at ¶4.

The circuit court denied the motion three and a half months later. Dkt. No. 3-1 at 7. It declined to consider the petitioner's argument about Attorney Provis's performance as appellate counsel because "the issue regarding peer review which was raised on the appeal was *not* settled law at the time the appeal was filed." Id. at 8-9. Rather, "[i]t was only *after* the appellate courts decided this issue that the decision in [the petitioner's] case was handed down, and those decisions dictated the result of that appeal." Id. at 9. And the court determined that "more importantly, issues regarding the effectiveness of appellate counsel [could] only be addressed by petition for writ of certiorari to the court of appeals which heard the appeal." Id. The circuit court found that it "[did] not have jurisdiction to hear these matters." Id. (citing State v. Starks, 349 Wis. 2d 274, 281, 294 (2013)).

According to the circuit court, the petitioner's other three issues were "normally matters addressed via a post conviction motion with the trial court," and they raised the question of whether Attorney Provis "was ineffective as *post conviction* counsel (as opposed to appellate counsel) for failing to file" a postconviction motion on the petitioner's behalf. Id. It concluded that neither trial nor postconviction counsel was ineffective for failing to seek a dismissal of the case for destruction of evidence. Id. at 10-12. The court reasoned that the evidence was merely "potentially useful"—short of the "apparently exculpatory"

6

standard. Id. at 11-12. "Since the issue of the [party to a crime] instruction was raised and argued by [the petitioner's] trial counsel in the context of the State's motion to amend the Information to include the [party to a crime] modifier, the court [found] that trial counsel was not ineffective for failing to specifically object to the court giving that instruction to the jury" and Attorney Provis was not ineffective for failing to raise that issue in a postconviction motion. Id. at 13. Last, the court determined that the petitioner's trial counsel was not ineffective for failing to object to several comments the State made during closing argument. Id. at 13-14. The court reasoned that the petitioner read the State's argument too literally and that the State's argument was not unlawful. Id. at 14-15. The court concluded that the petitioner "failed to set forth specific facts to show why his trial counsel was ineffective, which would *ipso facto* demonstrate his post conviction counsel was not ineffective for failing to request a Machner hearing on these issues." Id. at 15-16. For that reason, the court found that the petitioner was not entitled to an evidentiary hearing. Id. at 16.

On January 19, 2017, the petitioner filed a notice of appeal. Roalson, Sawyer County Case No. 2009CF69 (available at https://wcca.wicourts.gov). On appeal, the petitioner "again raise[d] a plethora of issues regarding his trial counsel's performance." Dkt. No. 12-13 at ¶7. He argued counsel was ineffective in failing to move for a mistrial based on destruction of evidence, a failure to object to the inclusion of the party-to-a-crime instruction and a failure to object to statements in the State's closing argument. Id. On June 5,

2018, the court of appeals affirmed the circuit court's denial of postconviction relief without an evidentiary hearing. Dkt. No. 12-13. In July of 2018, the petitioner filed a petition for review in the Wisconsin Supreme Court. State v. Roalson, Appeal No. 2017AP116 (available at https://wscca.wicourts.gov). On September 4, 2018, the court denied review. Dkt. No. 12-16.

C.    Federal *Habeas* Petition

On November 20, 2018, the petitioner filed this federal *habeas* petition. Dkt. No. 1. The petition asserted four grounds for relief: (1) ineffective assistance of appellate counsel for failing to "appeal trial counsel's failure to identify and pursue Brady violation," id. at 6; (2) ineffective assistance of appellate counsel for failing to "appeal trial counsel's failure to object to constructively amended jury instructions," id. at 7; (3) ineffective assistance of appellate counsel for failing to "appeal trial counsel's failure to object to false and misleading statements made by the state in it's [sic] closing argument," id. at 8; and (4) the petitioner's "sixth amendment due process right to confrontation was violated when the state did not produce for cross examination the DNA analyst from the state crime lab who actually analyzed the DNA found on items of evidence," id. at 9.

II.    **Analysis**

A.    Standard

Under the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, a federal court may grant *habeas* relief only if the state court decision was "either (1) 'contrary to, or involved an unreasonable application of, clearly

8

established Federal law, as determined by the Supreme Court of the United States,' or (2) 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Miller v. Smith, 765 F.3d 754, 759-60 (7th Cir. 2014) (quoting 28 U.S.C. §§2254(d)(1), (2)). A federal *habeas* court reviews the decision of the last state court to rule on the merits of the petitioner's claim. Charlton v. Davis, 439 F.3d 369, 374 (7th Cir. 2006).

"'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" Renico v. Lett, 559 U.S. 766, 773 (2010) (quoting Williams v. Taylor, 529 U.S. 362, 410 (2000)). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 71 (2003) (emphasis added). In other words, §2254(d)(1) allows a court to grant *habeas* relief only where it determines that the state court applied federal law in an "objectively unreasonable" way. Renico, 559 U.S. at 773. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 102 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "The standard under §2254(d) is 'difficult to meet' and 'highly deferential.'" Saxon v. Lashbrook, 873 F.3d 982, 987 (7th Cir. 2017) (quoting Cullen v. Pinholster, 563 U.S. 170, 181 (2011)).

B. <u>Procedural Default</u>

The respondent contends that the petitioner procedurally defaulted on his ineffective assistance of counsel claims. Dkt. No. 17 at 6. The respondent explains that the petitioner defaulted on his claims (1) "by not fully and fairly presenting them to the Wisconsin Supreme Court in his petition for review in his collateral challenge to his conviction" and (2) "because the court of appeals relied on independent and adequate state procedural rules when resolving the claims." <u>Id.</u> at 7-8.

1. *Fair presentment*

Under AEDPA, a state prisoner must exhaust available state-court remedies before a federal district court will consider the merits of a constitutional claim in a federal *habeas* petition. 28 U.S.C. §2254(b)(1)(A). The exhaustion requirement gives the state an opportunity to pass upon and correct alleged violations of the federal rights of persons who are incarcerated by the state. <u>Bolton v. Akpore</u>, 730 F.3d 685, 694 (7th Cir. 2013). To exhaust his claims, "[a] petitioner must raise his constitutional claims in state court 'to alert fairly the state court to the federal nature of the claim and to permit that court to adjudicate squarely that federal issue.'" <u>Weddington v. Zatecky</u>, 721 F.3d 456, 465 (7th Cir. 2013) (quoting <u>Villanueva v. Anglin</u>, 719 F.3d 769, 775 (7th Cir. 2013)). To comply with this requirement, the incarcerated person must "fairly present" the claim in each appropriate state court. <u>Bolton</u>, 730 F.3d at 694-95. "The failure to present fairly each habeas claim in state court 'leads to a default of the claim[s] and bar[s] the federal court from reviewing the

10

claim[s'] merits.'" Weddington, 721 F.3d at 456 (quoting Smith v. McKee, 598 F.3d 374, 382 (7th Cir. 2010)). The courts call this circumstance "procedural default."

The respondent contends that the petition for review in the petitioner's collateral challenge to his conviction "did not present the facts and controlling legal principles for" his ineffective assistance of counsel claims. Dkt. No. 17 at 7. According to the respondent, the petitioner "argued only that the circuit court should have granted him an evidentiary hearing on the Wis. Stat. § 974.06 motion in which he had raised these claims." Id. Conceding that the petition for review "listed the claims that [the petitioner] raised in his Wis. Stat. § 974.06 motion and the constitutional provisions that they are based on," the respondent asserts "this was not enough to preserve the claims for this Court's review." Id. at 8. The respondent concludes that the petitioner "develops no argument at all about any of the claims such that the supreme court could have understood what [the petitioner] was complaining about." Id. (citing Hicks, 871 F.3d at 531-32). Stating that "the petitioner did not describe the withheld evidence or the improper comments," and that "there are no facts or argument that support the rest of the claims," the respondent argues the petitioner procedurally defaulted them. Id.

2.    *Adequate and independent state ground doctrine*

One of the ways a criminal defendant can "procedurally default" on a claim—thus losing his right to federal *habeas* review on that claim—is if the last state court that issued judgment "'clearly and expressly' states that its

11

judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263 (1989) (quoting Caldwell v. Mississippi, 472 U.S. 320, 327 (1985)). "Merits review of a habeas claim is foreclosed if the relevant state court's disposition of the claim rests on a state law ground that is adequate and independent of the merits of the federal claim." Triplett v. McDermott, 996 F.3d 825, 829 (7th Cir. 2021). "Federal habeas courts must ascertain for themselves if the petitioner is in custody pursuant to a state court judgment that rests on independent and adequate state grounds." Coleman v. Thompson, 501 U.S. 722, 729 (1991). When considering whether a state court decision rests on a state procedural default, federal courts look to "the last *explained* state-court judgment." Ylst v. Nunnemaker, 501 U.S. 797, 805 (1991) (emphasis in original).

A state ground is independent "when the court actually relied on the procedural bar as an independent basis for its disposition of the case." Thompkins v. Pfister, 698 F.3d 976, 986 (7th Cir. 2012). "The test to avoid procedural default in federal court is whether the state court's decision rests on the substantive claims primarily, that is, whether there is no procedural ruling that is independent of the court's decision on the merits of the claims." Holmes v. Hardy, 608 F.3d 963, 967 (7th Cir. 2010). "If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available." Ylst, 501 U.S. at 801. However, "a state court that separately reaches the merits of a substantive claim may also produce an independent procedural ruling that bars federal habeas review." Holmes, 608 F.3d at 967. The question is whether

the state court's procedural ruling is primary. If it is, then the procedural ruling is independent. Id. As for adequacy, a state law ground is "adequate" "when it is a firmly established and regularly followed state practice at the time it is applied." Thompkins, 698 F.3d at 986. When considering the adequacy of a state law ground, the court does not consider "whether the review by the state court was proper on the merits." Lee v. Foster, 750 F.3d 687, 694 (7th Cir. 2014).

According to the respondent, the court of appeals relied on independent and adequate state procedural rules to reject the petitioner's claims on collateral review. Dkt. No. 17 at 8. The respondent reasons that the court of appeals found that the petitioner had not alleged a "sufficient reason" for not raising the claims in his postconviction motion during his direct appeal "as required by Wis. Stat. § 974.06(4) and" Escalona-Naranjo. Id. at 9. The respondent stresses that the court of appeals concluded that the circuit court properly denied the petitioner's postconviction motion without an evidentiary hearing because the petitioner had not sufficiently alleged his claims. Id. The respondent states that the court of appeals' ruling was "independent because it did not depend on the merits of [the petitioner's] claims." Id. Regarding adequacy, the respondent asserts "the Seventh Circuit has held that Wisconsin's pleading standard for obtaining evidentiary hearings and the application of the 'sufficient reason' requirement of Wis. Stat. § 974.06 are adequate procedural rules." Id. at 9-10 (collecting cases).

The Wisconsin Court of Appeals relied on an adequate and independent state law ground when it affirmed the circuit court's denial of the petitioner's §974.06 postconviction motion without a hearing. Dkt. No. 12-13. The court of appeals relied on the procedural rule set forth in the Wisconsin Supreme Court's decisions in State v. Romero-Georgana, 360 Wis. 2d 522, 539-40 (2014), and State v. Balliette, 336 Wis. 2d 358, 383-84 (2011). Id. at ¶¶6, 8. Those decisions provide the standard governing whether a petitioner is entitled to an evidentiary hearing in connection with a §974.06 motion.

Citing Romero-Georgana, the court of appeals evaluated whether the petitioner's motion "allege[d] facts sufficient to entitle the movant to relief." Dkt. No. 12-13 at ¶6 (citing Romero-Georgana, 360 Wis. 2d at 539-40). It explained that "[i]f the motion [did] not raise sufficient facts, or if the motion present[ed] only conclusory allegations, it [was] within the circuit court's discretion to order a hearing." Id. (citing Romero-Georgana, 360 Wis. 2d at 539-40). Noting the petitioner's burden to show that the claims he presented to the court of appeals were "clearly stronger" than the claims appellate counsel actually raised, the court of appeals determined that the petitioner "merely present[ed] a summary of what occurred in his prior appeal," and "appear[ed] to reason that his present claims [were] clearly stronger merely because he lost the prior appeal." Id. at ¶8 (citing Romero-Georgana, 360 Wis. 2d). The court found this "insufficient," stating that the petitioner had to demonstrate that "appellate counsel's failure to raise the asserted issues fell below an objective standard of reasonableness." Id. (citing Balliette, 336 Wis. 2d at 385). It explained the

Case 2:18-cv-01831-PP   Filed 09/30/22   Page 14 of 21   Document 26

presumption that appellate counsel acted reasonably, and the obligation on the petitioner to "overcome that presumption by presenting facts in a who, what, where, when, why and how format." Id. (citing Balliette, 336 Wis. 2d at 373, 385). To the court of appeals, both the petitioner's appellate brief and his §974.06 motion "fail[ed] in this regard." Id.

The court of appeals found that the petitioner "ha[d] not alleged sufficient facts to show that his present ineffective assistance of trial counsel claims [were] clearly stronger than the claims his appellate counsel actually raised." Id. at ¶9. For that reason, the court concluded that the petitioner "ha[d] not demonstrated a sufficient reason for failing to raise those matters in his direct appeal," and he was procedurally barred from raising those issues in his collateral appeal. Id. The court of appeals determined that because of that procedural bar, "the circuit court properly denied [the petitioner's] motion without holding an evidentiary hearing." Id.

The court of appeals clearly relied on the procedural rule set forth in Balliette and Romero-Georgana in concluding that the petitioner's §974.06 postconviction motion did not entitle him to an evidentiary hearing; that rule is an independent state law ground for the court's decision. As for whether that ground is adequate, this court's inquiry "is limited to whether it is a firmly established and regularly followed state practice at the time it is applied." Lee v. Foster, 750 F.3d 687, 694 (7th Cir. 2014). The Seventh Circuit has answered this question affirmatively, stating that this rule "is a well-rooted procedural requirement in Wisconsin and is therefore adequate." Id. (collecting cases).

15

The Wisconsin Court of Appeals relied on an adequate and independent state law ground to deny relief on the petitioner's ineffective assistance of counsel claims. Those claims are procedurally defaulted. Unless the petitioner can show both cause and prejudice, this court cannot review his procedurally defaulted claims.

### 3. *Cause and prejudice*

If a federal court determines that a petitioner's claims are procedurally defaulted, it must consider whether to excuse that default. Coleman, 501 U.S. at 750. A court may excuse default if the petitioner can show either (1) cause for the default and resulting prejudice or (2) that the failure to consider the federal claim will result in a fundamental miscarriage of justice. Id. (citations omitted). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). "Prejudice means an error which so infected the entire trial that the resulting conviction violates due process." Weddington, 721 F.3d at 465 (quoting McKee, 598 F.3d at 382)). To show that a miscarriage of justice will occur if the court were to deny *habeas* relief, a petitioner must show that he is actually innocent of the offenses of which he was convicted. Hicks v. Hepp, 871 F.3d 513, 531 (7th Cir. 2017). A petitioner asserting actual innocence as a gateway to a defaulted claim "must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found [the] petitioner guilty beyond a reasonable doubt.'"

16

House v. Bell, 547 U.S. 518, 536-37 (2006) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)).

The petitioner has not shown cause and prejudice for his procedural defaults. The petitioner, representing himself, filed the §974.06 postconviction motion underlying his collateral appeal. Dkt. No. 12-10 at 9. *Pro se* status is not cause to excuse procedural default. Harris v. McAdory, 334 F.3d 665, 668 (7th Cir. 2003). The petitioner has not identified any external factor that impeded his ability to comply with Wisconsin's procedural rules. Finally, the petitioner has not demonstrated that a miscarriage of justice will occur if the court does not set aside these procedural defaults. He has not shown that he is actually innocent of the offenses underlying his conviction.

C.    Confrontation Clause

"The Confrontation Clause of the Sixth Amendment provides: 'In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" Davis, 547 U.S. 813. The Confrontation Clause bars the admission of a witness's testimonial statement when that witness does not appear at trial "unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." Id. (citing Crawford v. Washington, 541 U.S. 36, 53-54 (2004)). Only testimonial statements, however, "cause the declarant to be a 'witness' within the meaning of the Confrontation Clause." Id. (citing Crawford, 541 U.S. at 51). Nontestimonial statements, "while subject to traditional limitations upon hearsay evidence," do not implicate the Confrontation Clause. Id.

17

The respondent argues that the court of appeals did not unreasonably apply federal law when it concluded that Leider's testimony did not violate the petitioner's right to confrontation. Dkt. No. 17 at 12. He states that the Seventh Circuit has not only held that "testimony like Leider's does not violate the Confrontation Clause," but has "endorse[d] its use." Id. at 18 (citing United States v. Turner, 709 F.3d 1187, 1190-91 (7th Cir. 2013)). The respondent notes that "Leider never mentioned Gajewski or his conclusions during her direct testimony about her findings." Id. Rather, "she testified only about her own conclusion that she reached after reviewing Gajewski's work." Id. at 19. The respondent asserts that the mere fact that Leidner and Gajewski ultimately reached the same conclusion does not show that Leidner failed to conduct her own analysis. Id. at 20.

The petitioner maintains that his "right to confrontation was violated when the state did not present DNA analyst Ryan Gajewski at trial." Dkt. No. 20 at 10. The petitioner stresses that (1) "Ms. Leider did not analyze the DNA evidence on the knives herself," (2) "[s]he simply reviewed the written materials created by Gajewski," (3) "[h]er review did not include a second test on any evidence" and (4) "she was not the peer reviewer of the original analyst." Id. at 13. He says that for these reasons, he was unable to "determine the original analyst's competency, honesty or even if he had simply made mistakes writing his methods and data down." Id. at 13-14. According to the petitioner, "Ms. Leider did not present her own conclusions." Id. at 14. He says that her conclusions are "identical to the conclusions in the report." Id. The petitioner

states that Leider "has no opinion of her own." Id. at 15. Asserting that "[i]t is clear that Ms. Leider was 'acting as a mere conduit' for the actual analyst," the petitioner concludes that "[t]his is a confrontation clause even without considering subsequent U.S. Supreme Court decisions." Id. He says that "[t]herefore, all of the foregoing demonstrates the Bullcoming rule against surrogate testimony, . . . and so [the petitioner's] basic right to confrontation was violated here." Id. To the petitioner, "it seems abundantly clear State v. Williams . . . does not survive Crawford." Id. at 17.

During the petitioner's direct appeal, the Wisconsin Court of Appeals considered his claim that the introduction of DNA evidence analyzed by Gajewski combined with Gajewski's failure to appear at trial violated his rights under the Confrontation Clause. Dkt. No. 12-5 at ¶8. Citing the Wisconsin Supreme Court's decision in State v. Williams, 253 Wis. 2d 99 (Wis. 2002), the court of appeals concluded that Leider's testimony did not violate the petitioner's Confrontation Clause rights. Id. at ¶¶1, 6, 8, 15. The court explained that Williams "essentially holds that a state crime lab peer-review analyst may testify in place of the original analyst." Id. at ¶15 (citing Williams, 253 Wis. 2d at 113). The court of appeals found that Leider had reached her own opinions after "compar[ing] the profiles Gajewski developed from the evidence found at the crime scene with the standards collected from the three individuals." Id. at ¶14. Observing Leider's testimony that "her technical review was the same as a peer review," and that she reviewed the file and reached her own opinions, the court concluded that Leider "was not a mere conduit for

19

Gajewski's opinions." Id. at ¶15 (citing Williams, 253 Wis. 2d at 113-14). While the court acknowledged the petitioner's argument that Williams was no longer good law due to Crawford v. Washington, it disagreed with the petitioner. Id. at ¶11.

The court of appeals' decision was within the bounds of reasonableness that §2254(d) requires. The petitioner does not raise, and this court is not aware of, any federal law as determined by the United States Supreme Court clearly holding that Leider's testimony violated the Confrontation Clause. As the court of appeals explained, Leider testified that she proofread the entire file and reached her own independent opinions and conclusions regarding the DNA collected in the petitioner's case. Dkt. No. 12-5 at ¶14. At trial, Leider conveyed those opinions and conclusions, and the petitioner had an opportunity to confront her about those opinions and conclusions. "[A]n appropriately credentialed individual may give expert testimony as to the significance of data produced by another analyst." United States v. Maxwell, 724 F.3d 724, 727 (7th Cir. 2013) (quoting United States v. Turner, 709 F.3d 1187, 1190-91 (7th Cir. 2013); Williams v. Illinois, __ U.S. __, 132 S. Ct. 2221, 2233-35 (2012)). An analyst's reliance on another's data to reach a conclusion does not violate the Sixth Amendment. Id. (citing Turner, 709 F.3d at 1190-91).

The court will dismiss the petition and dismiss the case.

## III. Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2254 Cases, the court must consider whether to issue a certificate of appealability. A court may issue

a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitutional right. <u>See</u> 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (internal quotations omitted). The court declines to issue a certificate of appealability, because reasonable jurists could not debate the petitioner's procedural default or the court's decision to dismiss the petition on the merits.

## IV. Conclusion

The court **DISMISSES** the petition for writ of *habeas corpus* under 28 U.S.C. §2254. Dkt. No. 1.

The court **ORDERS** that this case is **DISMISSED WITH PREJUDICE**. The clerk will enter judgment accordingly.

The court **DECLINES TO ISSUE** a certificate of appealability.

Dated in Milwaukee, Wisconsin this 30th day of September, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

21